**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KALA CHENIER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-4125** |
| **BOARD OF SUPERVISORS FOR THE LOUISIANA SYSTEM** | **SECTION: "G"(3)** |

## ORDER

In this litigation, Plaintiff Kala Chenier ("Plaintiff") alleges that she was sexually harassed and discriminated against on the basis of her gender by her professor while a student at Southeastern Louisiana University ("Southeastern") in violation of 28 U.S.C. § 1681 ("Title IX") and Louisiana state law.[1] Pending before the Court is Defendant Board of Supervisors for the University of Louisiana System's ("Defendant") "Motion for Summary Judgment."[2] Having considered the motion, the memoranda in support and in opposition, and the applicable law, the Court will dismiss Plaintiff's state law negligence claims without prejudice for lack of subject-matter jurisdiction and deny Defendant's motion for summary judgment in all other respects.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiff alleges that she was sexually harassed by her professor, Dr. Rick Miller, in the spring semester of 2015 while she was a student at Southeastern Louisiana University.[3] Plaintiff alleges that Dr. Miller engaged in "severe and pervasive" harassment and

---

[1] Rec. Doc. 46 at 7–9.

[2] Rec. Doc. 22.

[3] Rec. Doc. 46 at 4–5.

1

discrimination throughout the semester, such as unwanted physical touching of Plaintiff during class, asking Plaintiff to smell the crotch of his pants, and touching himself inappropriately while alone with Plaintiff in Southeastern's greenhouse.[4] Plaintiff contends that she reported Dr. Miller's behavior at the end of the semester, but Defendant failed to take any action against the unlawful sexual harassment and gender discrimination, despite the fact that they had also received "numerous complaints" from other students and faculty about Dr. Miller's behavior in the past.[5] Plaintiff asserts that she was subject to a hostile environment, sexual harassment, and assault by Dr. Miller, and asserts a claim for gender discrimination under Title IX and a negligence claim under Louisiana state law.[6]

## B.    *Procedural Background*

On May 3, 2016, Plaintiff filed the complaint in this matter.[7] On May 12, 2017, Plaintiff filed a first amended complaint.[8] On February 27, 2017, Defendant filed the instant motion.[9] Plaintiff filed an opposition on March 7, 2017.[10] On March 17, 2017, with leave of Court, Defendant filed a reply.[11] On March 23, 2017, Plaintiff filed a supplemental memorandum with leave of Court.[12]

---

[4] *Id.* at 4–6.

[5] *Id.* at 6–8.

[6] *Id.* at 7–10.

[7] Rec. Doc. 1.

[8] Rec. Doc. 46.

[9] Rec. Doc. 22.

[10] Rec. Doc. 23.

[11] Rec. Doc. 29.

[12] Rec. Doc. 35.

## II. Parties' Arguments

### A. Defendant's Arguments in Support of the Motion for Summary Judgment

#### 1. Plaintiff's Title IX Claim

In its motion, Defendant first argues that summary judgment should be granted in its favor on Plaintiff's Title IX claim, asserting that: (1) Plaintiff failed to provide timely notice to Defendant of the alleged harassment by Dr. Miller, and thus Defendant did not have an opportunity to take corrective action; (2) Plaintiff was not barred from accessing any educational opportunity or benefit by Dr. Miller's alleged conduct; and (3) Defendant was not deliberately indifferent to the alleged harassment that was not disclosed until after the semester was over.[13]

In particular, Defendant avers that Plaintiff did not inform Defendant of her allegations of sexual harassment by Dr. Miller, her Ecology professor in the spring semester of 2015, until after the semester was over and after Plaintiff received a final grade of "B" for Dr. Miller's class.[14] Defendant points out that Plaintiff transferred schools after the end of the spring semester of 2015 and did not re-enroll in Southeastern.[15] Thus, Defendant argues that Plaintiff did not provide adequate notice to allow Defendant to take corrective action, and that Defendant therefore could not have been "deliberately indifferent" to the alleged harassment.[16]

---

[13] Rec. Doc. 22-2 at 1–2.

[14] *Id.* at 4–5.

[15] *Id.*

[16] *Id.*

Furthermore, Defendant contends that Dr. Miller, a tenured professor, resigned before a tenure revocation hearing could be prosecuted.[17]

Defendant further avers that Plaintiff admits that she took and completed Dr. Miller's class, received a final grade, and enrolled in another university for the fall semester of 2015, and thus Defendant argues that she was not denied any educational opportunity or benefit by Defendant.[18] Moreover, Defendant asserts that Plaintiff's allegations fail to meet the "objectively severe and pervasive standard" required to recover on a Title IX claim and to show that Plaintiff was "effectively barred" from an educational opportunity or benefit by Dr. Miller's actions.[19] Defendant argues that "Plaintiff subjectively chose to endure the alleged inappropriate behavior until the class ended without reporting it to any Southeastern official," and consequently, "as a matter of law, [P]laintiff's allegations of harassment fail to meet the objectively severe and pervasive standard necessary to recover damages under Title IX."[20]

### 2.    Plaintiff's Negligence Claim

With regard to Plaintiff's negligence claim under Louisiana state law, Defendant asserts that it is an arm of the state of Louisiana and is thus immune from Plaintiff's state law claim under the Eleventh Amendment to the United States Constitution.[21] Defendant contends that the

---

[17] *Id.* at 6.

[18] *Id.* at 5.

[19] *Id.* at 6.

[20] *Id.*

[21] *Id.* at 7–8.

Louisiana legislature has not waived Eleventh Amendment immunity for state law claims in federal court, but rather expressly reserved its immunity.[22]

## B. *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

### 1. Plaintiff's Title IX Claim

In opposition, Plaintiff points to evidence that Dr. Miller engaged in "inappropriate, perverse, harassing, and altogether manipulative behavior" against Plaintiff multiple times over the semester while he was Plaintiff's Ecology professor.[23] For example, among other allegations, Plaintiff asserts that Dr. Miller: (1) repeatedly contacted and harassed Plaintiff via personal email, text messages, private phone calls, and in-person visits to Plaintiffs' place of employment to discuss personal and inappropriate matters, making her feel "stalked;" (2) asked Plaintiff to smell his crotch for traces of his wife's perfume in the middle of class; (3) physically touched Plaintiffs' backside and breast while leaning in close to Plaintiff during class on "numerous occasions;" (4) instructed Plaintiff to mix fertilizer on the ground while she was on her hands and knees and he stood behind her and watched; and (5) touched himself inappropriately" in front of Plaintiff after requesting that Plaintiff come to the university's greenhouse with him alone and telling another student not to come.[24]

Plaintiff agrees that actual notice of a harasser's misconduct is required to recover under Title IX in a private action, but argues that Title IX does not require the victim herself to give such notice.[25] Plaintiff points out that the Office of Civil Rights for the United States Department

---

[22] *Id.*

[23] Rec. Doc. 23 at 1–2.

[24] *Id.* at 1–5, 9–13. *See* Rec. Doc. 23-4 at 1; Rec. Doc. 35-2 at 20–27.

[25] Rec. Doc. 23 at 6.

of Education ("OCR") published a "Dear Colleague Letter" in 2011, which, according to Plaintiff, advises universities that they must respond immediately to notice of harassment provided by anyone, even if the victims themselves do not report the harassment.[26]

Here, Plaintiff asserts that Defendant received actual notice from her when she submitted a detailed letter containing a description of Dr. Miller's conduct and met with the head of the Department of Biological services, Dr. Christopher Beachy, and Southeastern's Title IX compliance officer, Gene Pregeant, at the end of the semester.[27] Moreover, Plaintiff avers that Defendant had actual notice of Dr. Miller's sexual misconduct from the numerous past complaints made by other students and faculty.[28] Plaintiff points out that when she went to see Dr. Beachy to report that "one of her professors" had sexually harassed her over the semester, Dr. Beachy's secretary immediately and correctly asked Plaintiff, "Is this about Dr. Miller?"[29] Plaintiff asserts that the secretary's reaction shows that Defendant was already well aware of Dr. Miller's misconduct towards students.[30] Furthermore, according to Plaintiff, during her separate meetings with Dr. Beachy and then Gene Pregeant, both officials informed Plaintiff that they were already aware of Dr. Miller's misconduct and that this was not the first time such a complaint had been made against him.[31] According to Plaintiff, during her meeting with Gene

---

[26] *Id.* at 7 (quoting Rec. Doc. 23–7 at 4).

[27] *Id.*

[28] *Id.* at 8.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 8–9.

Pregeant, he also "referred to a file held on Dr. Miller allegedly detailing such complaints."[32] Plaintiff argues that for each of these complaints, Defendant was required to take immediate corrective action, but instead Defendant continued to employ Dr. Miller and "sit idly by while students of its university repeatedly suffered sexual harassment and discrimination by Dr. Miller."[33]

Additionally, Plaintiff asserts that, even though she chose to endure the harassment to finish her class and receive a grade, Dr. Miller's sexual harassment denied Plaintiff educational opportunities or benefits.[34] Plaintiff contends that Dr. Miller's misconduct was so severe and pervasive that it denied Plaintiff an opportunity to learn in an environment free from harassment, and compelled Plaintiff to leave the university to finish her education out of state and seek therapy.[35] Plaintiff further argues that she was unable to attend several Ecology classes due to Dr. Miller's behavior, and, after the incident in the greenhouse when Dr. Miller allegedly touched himself in front of her, she stopped going to class altogether.[36] According to Plaintiff, she was also denied a fair and unbiased grade, as she maintained an "A" throughout the class and only began receiving lower grades from Dr. Miller so that he could "save himself" from other students' accusations that he was giving preferential treatment to Plaintiff.[37]

---

[32] *Id.* at 9.

[33] *Id.* at 9–10.

[34] *Id.* at 13–14.

[35] *Id.* at 14.

[36] *Id.*

[37] *Id.* at 15.

Furthermore, Plaintiff argues that Defendant was deliberately indifferent to the harassment and failed to respond reasonably to the risk of harm against Plaintiff.[38] Plaintiff points out that even though she complained at the end of the semester, Defendants had several months to investigate Plaintiff's allegations and take action against Dr. Miller.[39] Instead, Plaintiff avers, Dr. Miller maintained his employment well into the next academic year, and Defendant provided "little information" to her regarding the status of the investigation or whether Defendant took "any meaningful action whatsoever."[40] Plaintiff further contends that the "basic information conveyed to Plaintiff" was that Dr. Miller was tenured, and that it would be difficult to remove him.[41]

### 2. Plaintiff's Negligence Claim

Finally, Plaintiff argues that this Court may exercise supplemental jurisdiction over Plaintiff's state law negligence claim.[42] Plaintiff contends that Defendant unequivocally waived its Eleventh Amendment immunity to Title IX causes of action in federal court when it accepted federal financial assistance, and therefore the Court has original jurisdiction over Plaintiff's Title IX claim.[43] According to Plaintiff, the Seventh Circuit and the Tenth Circuit have recognized that

---

[38] *Id.*

[39] *Id.* at 16.

[40] *Id.*

[41] *Id.* at 4, 16.

[42] *Id.* at 16.

[43] *Id.* at 16–17.

courts can hear state law claims in conjunction with a Title IX claim when they arise out of the same case or controversy, as they do here.[44]

## C.  *Defendant's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Defendant argues that Plaintiff was required to give actual notice of the alleged sexual harassment against Plaintiff in particular, and that constructive notice cannot support a Title IX claim.[45] Defendant asserts that notice of other unrelated complaints against Dr. Miller is insufficient to satisfy the actual notice element of Title IX claims, as it does not give Defendant a reasonable chance to take remedial action while Plaintiff was actually enrolled at Southeastern and before she moved out of state.[46] Defendant further contends that the prior complaints are too distinguishable from Plaintiff's complaint for Plaintiff to assert that they provided actual notice of her allegations.[47]

Moreover, Defendant argues that Plaintiff left Southeastern within a few months after her initial report of harassment, and so Defendant "never had a reasonable chance or amount of time to take remedial action while [P]laintiff was actually enrolled in Southeastern."[48] According to Defendant, the persons necessary to conduct an investigation into Plaintiff's allegations against Dr. Miller were not present on campus or readily available over the summer break after Plaintiff complained.[49] Thus, Defendant asserts that it was never given a chance by Plaintiff "to remove

---

[44] *Id.* at 17–18 (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208 (10th Cir. 2014); *Doe-2 v. McLean County Unit Dist. 5 Bd., Directors*, 593 F.3d 507 (7th Cir. 2010)).

[45] Rec. Doc. 29 at 2.

[46] *Id.* at 2, 4.

[47] *Id.* at 3.

[48] *Id.* at 4.

[49] *Id.* at 4–5.

Dr. Miller from her classes or presence," or to conduct a tenure revocation hearing because Plaintiff "chose to immediately move away" and "never returned to the school."[50] Therefore, Defendant contends that it could not have been deliberately indifferent to the alleged harassment, as its actions were not "clearly unreasonable in light of the known circumstances."[51]

Additionally, Defendant argues that supplemental jurisdiction does not override a state's immunity under the Eleventh Amendment.[52] According to Defendant, a constitutional amendment providing immunity to damages in federal court pursuant to state law causes of action "cannot be stripped away" by a federal statute.[53]

**D.     Plaintiff's Arguments in Further Opposition to the Motion for Summary Judgment**

In Plaintiff's supplemental memorandum, Plaintiff argues that several courts have held that Title IX's actual notice prong only requires that Defendant knew the harasser engaged in sexual harassment and was deliberately indifferent to it, and that Title IX does not require that Defendant have actual notice of the exact acts directed against a particular plaintiff.[54] Furthermore, Plaintiff represents that she was recently provided evidence of multiple formal complaints against Dr. Miller dating back to at least 2001 that were in Defendant's possession and, according to Plaintiff, further support denying Defendant's motion.[55]

---

[50] *Id.* at 5.

[51] *Id.* at 3.

[52] *Id.* at 6.

[53] *Id.*

[54] Rec. Doc. 35 at 6 (citing *Board of Trustees of Hamilton*, 551 F.3d 599, 605–06 (7th Cir. 2008); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006); *Doe v. Blackburn Coll.*, No. 06-3205, 2012 WL 640046, at *9 (C.D. Ill. Feb. 27, 2012) (citing *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004)).

[55] *Id.* at 1, 5.

For example, Plaintiff points to a May 19, 2003 letter to Dr. Miller in which a research associate at Southeastern informed Dr. Miller that his comment that she needed to be "spanked" were "insulting and inappropriate," and noted that he had engaged in similar "verbal suggestions" and "unwanted touching" with graduate students.[56] Plaintiff avers that on June 3, 2003, another student wrote a letter to Gene Pregeant to inform him that Dr. Miller once tugged on the zipper of her sweatshirt and attempted to look down her neckline.[57] The same letter also detailed "unwanted touching" when Dr. Miller attempted to rub aloe lotion on the student's back and neck.[58] Likewise, on June 19, 2003, the then-Head of Biological Sciences wrote to Dr. Miller informing him that there had been three reported incidents of sexual harassment across a period of fifteen months, which "indicate a continual pattern of unacceptable language and poor judgment with regard to your interactions with women."[59]

More recently, Plaintiff points to a July 16, 2007 letter from Gene Pregeant to Dr. Miller, in which Pregeant avers that a graduate biology student "levied serious accusations against [Dr. Miller] concerning comments that could have been construed as discriminatory and harassing," and Pregeant "strongly caution[s] [Dr. Miller] about crossing boundaries of familiarity with students."[60] Likewise, Plaintiff asserts that a "group of concerned students" wrote in a 2013 letter that "inappropriate comments and inappropriate behavior have become common place" in Dr.

---

[56] *Id.* at 4; Rec. Doc. 35-2 at 1.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 4; Rec. Doc. 35-2 at 7.

[60] Rec. Doc. 35 at 5; Rec. Doc. 35-2 at 10.

Miller's classroom.[61] According to Plaintiff, on November 5, 2013, a faculty member who was also Dr. Miller's mentee described a "pattern of harassment that began to emerge at the beginning of the semester" and expressed concerns about "further escalation."[62] The letter states that the faculty member was experiencing a "feeling of discomfort . . . when [she] see[s] Dr. Miller in the hallway," and requests that she "not be associated with Dr. Miller professionally or otherwise in the future."[63]

In sum, Plaintiff argues that this "clear pattern of inexcusable conduct" was "allowed by Defendant's frustrating, deliberate indifference."[64] Plaintiff asserts that only the June 19, 2003 letter advises Dr. Miller that "a repeated incident in the future will result in severe disciplinary action," but Plaintiff contends that Defendant failed to take any action against the multiple incidents of harassment since that letter.[65]

Plaintiff also provides evidence of her lost educational opportunities.[66] Plaintiff points out that in emails she sent to Dr. Beachy and Gene Pregeant during the summer of 2015, she expressed interest in staying at Southeastern for her final year to graduate, but informed them that she was told that Dr. Miller "was probably not going to be terminated" and that she could not return to Southeastern if he would still be there.[67] Plaintiff also stated that it was "extremely hurtful" to learn that Dr. Miller had "a history of crossing lines with female students," and asked

---

[61] *Id.*; Rec. Doc. 35-2 at 13–14.

[62] Rec. Doc. 35 at 5.

[63] Rec. Doc. 35-2 at 15.

[64] Rec. Doc. 35 at 5.

[65] *Id.* at 6.

[66] *Id.* at 7.

why Dr. Miller was "allowed to be inappropriate with me if the school knew he had a problem with boundaries when it came to young females."[68] Plaintiff argues that the fact that Dr. Miller remained employed by Defendants into the next year without facing any consequences for his "decade plus long career of Title IX violations at Southeastern University" further supports denying the motion.[69]

### III. Law and Analysis

*A.     Legal Standard for Motions for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[70] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[71] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[72] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment

---

[67] Rec. Doc. 35-3 at 1–2.

[68] *Id.* at 2.

[69] Rec. Doc. 35 at 7.

[70] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[71] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[72] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

as a matter of law.[73] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[74]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[75] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[76] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[77] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[78] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[79]

---

[73] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[74] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[75] *Celotex*, 477 U.S. at 323.

[76] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[77] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[78] *Little*, 37 F.3d at 1075.

[79] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

## B.        *Legal Standard for Title IX Sexual Harassment Claims*

20 U.S.C. § 1681(a) provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Title IX is enforceable through an implied private right of action, and "sexual harassment of a student by a teacher constitutes actionable discrimination for the purposes of Title IX."[80]

In *Gebser v. Lago Vista Independent School District*, the Supreme Court held that a school district may not be held liable for damages under Title IX for a teacher's sexual harassment of a student "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."[81] The Supreme Court further determined that "the response must amount to deliberate indifference to discrimination."[82] The Fifth Circuit has held that the "deliberate indifference standard is a high one."[83] School officials may avoid liability under the deliberate indifference standard by "responding reasonably to a risk of harm . . . even if the harm ultimately was not averted."[84] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do

---

[80] 20 U.S.C. § 1681(a); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 383 (5th Cir. 2000) (citing *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992)); *see also Matthews v. Nwankwo*, 36 F. Supp. 3d 718, 722 (N.D. Miss. 2014).

[81] 524 U.S. 274, 290 (1998); *see Doe*, 220 F.3d at 384.

[82] *Gebser*, 524 U.S. at 290.

[83] *Doe*, 220 F.3d at 384 (citations omitted).

[84] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

not amount to deliberate indifference."[85] Determining what remedial action is appropriate depends on the facts of each case.[86] In sum, the Fifth Circuit has held that a plaintiff asserting a sexual harassment claim against a professor can defeat a motion for summary judgment by adducing evidence to show that: (1) a supervisory official with authority to institute corrective measures; (2) had actual notice of the discrimination; and (3) acted with deliberate indifference.[87]

## C.   *Analysis*

### 1.   **Plaintiff's Title IX Claim**

In its motion, Defendant argues that summary judgment in its favor is warranted because: (1) Plaintiff failed to provide timely notice to Defendant of the alleged harassment by Dr. Miller, and thus Defendant did not have an opportunity to take corrective action; (2) Plaintiff was not barred from accessing any educational opportunity or benefit by her professor's alleged conduct, and the alleged sexual harassment was not "so severe, pervasive, and objectively offensive that it effectively barred [Plaintiff's] access to an educational opportunity or benefit;" and (3) Defendant was not deliberately indifferent to the alleged harassment that was not disclosed until after the semester was over.[88] As a preliminary matter, the Court notes that Defendant does not argue that Plaintiff failed to satisfy the first prong of her Title IX claim, *i.e.* that the university officials to whom Plaintiff reported the alleged harassment were "supervisory official[s] with authority to institute corrective measure[s]." [89] The Court will proceed to consider

---

[85] *Doe v. Dallas Ind. School Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

[86] *Id.* (quoting *Rosa H. v. San Elizario Independent School Dist.*, 106 F.3d 648, 660-61 (5th Cir. 1997)).

[87] *Id.*

[88] Rec. Doc. 22-2 at 1–2, 5–6.

[89] *Doe*, 220 F.3d at 384.

each of Defendant's arguments in turn.

###### i.    *Actual Notice*

First, Defendant asserts that Plaintiff failed to provide timely, actual notice to Defendant of Dr. Miller's alleged harassment before she left Southeastern, and thus Defendant did not have an adequate opportunity to take corrective action in response to the allegations.[90] Defendant further contends that past complaints from other students regarding Dr. Miller's misconduct is insufficient to satisfy the actual notice requirement.[91] In opposition, Plaintiff argues that she is only required to show that Defendant had actual notice of Dr. Miller's misconduct, and that this can be satisfied by showing that Defendant knew about similar complaints from other students before Dr. Miller began harassing Plaintiff and failed to appropriately respond.[92] Moreover, Plaintiff asserts that she provided actual notice of the harassment against her as well, and that she only left Southeastern after it became apparent to her that Defendant would take little to no action against Dr. Miller in response.[93]

In *Gebser v. Lago Vista Independent School District*, the Supreme Court determined that a school district may not be held liable for damages under Title IX under a *respondeat superior* or constructive notice theory, *i.e.* that the district "should have known about harassment but failed to uncover and eliminate it."[94] The Supreme Court held that Title IX only permits damages in a private action if the school district or university had "actual knowledge of discrimination in

---

[90] Rec. Doc. 22-2 at 1–2.

[91] *Id.*

[92] Rec. Doc. 35 at 6–7.

[93] *Id.*

[94] *Gebser*, 524 U.S. at 282, 285.

17

the recipient's programs and fails adequately to respond."[95] The Supreme Court noted that the "central purpose" of the actual notice requirement is to "avoid diverting education funding from beneficial uses where a recipient was unaware of discrimination in its programs and is willing to institute prompt corrective measures . . . to end the harassment or to limit further harassment."[96]

Here, the parties dispute whether the actual notice requirement may be satisfied by past complaints from students regarding similar sexual harassment allegations against the same professor, or if Defendant must have had actual notice of the specific acts of sexual harassment against Plaintiff herself. The Court notes that in *Gebser,* the Supreme Court did not explicitly require actual knowledge of the particular instance of harassment complained of by a plaintiff.[97] Rather, the Supreme Court focused on a school's actual knowledge of "discrimination *in the recipient's programs*" and whether the school adequately responded to "end the harassment or to *limit further harassment*."[98] While the Supreme Court in *Gebser* did hold that complaints from parents of other students regarding inappropriate comments made by a teacher during class did not provide actual notice of sexual abuse in that case, it was because such comments were "plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student."[99]

Moreover, although it does not appear that the Fifth Circuit has directly addressed this question, the Fifth Circuit has held that a school district has actual knowledge of the harassment

---

[95] *Id.* at 290.

[96] *Id.* at 289.

[97] *Id.* at 290.

[98] *Id.* at 289–90 (emphasis added).

[99] *Id.* at 291.

when it knew that "there was a *substantial risk* that sexual abuse would occur."[100] In fact, several other courts of appeal and district courts have determined that knowledge of a history of similar sexual misconduct with students may satisfy the actual notice prong.[101] Moreover, a requirement that actual notice is not provided unless a university receives a report of sexual harassment from the Title IX plaintiff herself "would protect [universities] from liability whenever a student was abused by a teacher, although the [university] might have had notice that the teacher had abused other students in the past."[102]

Regardless, the Court need not decide this issue here, as Plaintiff has pointed to sufficient evidence that Defendant had actual notice of Dr. Miller's harassment from both the history of similar complaints against him by female students and Plaintiff's own report of sexual

---

[100] *Rosa H.*, 106 F.3d at 652–53 (emphasis added).

[101] *See, e.g., Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1257 (11th Cir. 2010) ("[N]o circuit has interpreted *Gebser*'s actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff herself."); *Escue v. N. OK Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) ("Although *Gebser* makes clear that 'actual notice requires more than a simple report of inappropriate conduct by a teacher . . . the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.'" (quoting *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62 (D. Me. 1999)); *Warren ex rel. Good v. Reading School District*, 278 F.3d 163, 172–73 (3d Cir. 2002) (holding that memorandum from a principal to a teacher directing the teacher to stop playing classroom games that involved physical contact constituted evidence that the principal had "actual knowledge" that the teacher was abusing students); *Baynard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir. 2001) ("We note that a Title IX plaintiff is not required to demonstrate actual knowledge that a particular student was being abused. We believe that the actual notice requirement could have been satisfied, for example, if Malone had had actual knowledge that Lawson was currently abusing one of his students, even without any indication of which student was being abused."); *Doe v. Farmer*, No. 06-0202, 2009 WL 3768906, at *9 (M.D. Tenn. Nov. 9, 2009) ("The court finds that the plaintiff can meet her burden by showing that the defendant knew that Farmer was abusing Janie II, because such abuse implies a substantial risk that Farmer was abusing other students as well."); *N.B. v. San Antonio I.S.D.*, No. 05-0239, 2007 WL 4205726, at *4 (W.D. Tex. Nov. 27, 2007) (finding that the "known allegations dating as far back as 1996 create a fact issue as to whether the school district knew there was a substantial risk that Mass would engage in sexual abuse of students"); *Folkes v. New York Coll. of Osteopathic Med. of New York Inst. of Tech.*, 214 F. Supp. 2d 273, 284 (E.D.N.Y. 2002) (finding that "actual knowledge of discrimination in the recipient's programs, the requirement set forth in *Gebser*, is simply not the same thing as knowledge of each and every specific discriminatory act"); *Gordon ex rel. Gordon v. Ottumwa Community School District*, 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) (agreeing that the school officials' knowledge that the teacher had in the past hugged a student and then kissed that student on the lips and patted her buttocks placed the school district on notice that the teacher presented a risk of sexually inappropriate conduct).

[102] *Doe*, 66 F. Supp. 2d at 63.

harassment provided several months prior to transferring universities. With regard to the actual notice from previous complaints, Plaintiff has adduced sufficient evidence of over ten years of complaints of sexual harassment against Dr. Miller provided to Defendant that are similar to Plaintiff's allegations, including: (1) multiple complaints in 2003 regarding "insulting and inappropriate" suggestive comments, "unwanted touching" of students, and a "continual pattern of unacceptable language and poor judgment with regard to [his] interactions with women;" (2) a complaint in 2007, where a graduate student "levied serious accusations against [Dr. Miller] concerning comments that could have been construed as discriminatory and harassing;" and (3) several complaints in 2013 regarding "inappropriate comments and inappropriate behavior."[103] Moreover, Plaintiff offered evidence contemporaneous with her own complaint that Defendant had actual notice of Dr. Miller's past misconduct. For example, Plaintiff points to the correct guess by Dr. Beachy's secretary that the professor who had sexually harassed Plaintiff over the semester was Dr. Miller.[104] Plaintiff also points to Dr. Beachy's and Gene Pregeant's statements made during their meetings with Plaintiff that they were both aware that other complaints of sexual misconduct had been made against Dr. Miller.[105]

Even if Plaintiff was required to show that Defendant had actual notice of her specific sexual harassment allegations against Dr. Miller, the Court finds that Plaintiff has submitted sufficient evidence to preclude summary judgment here. Plaintiff has pointed to evidence that she met with both Dr. Beachy and Gene Pregeant at the end of the 2015 spring semester to file a

---

[103] *See* Rec. Doc. 35-2.

[104] *See* Rec. Doc. 23 at 4.

[105] *Id.* at 4–5.

sexual harassment claim against Dr. Miller.[106] Plaintiff also points out that Dr. Beachy's office asked her to return with a written statement, which she provided.[107] Moreover, Plaintiff has offered as evidence a series of emails throughout June and July of 2015 regarding her sexual harassment allegations that were sent between her, Gene Pregeant, Dr. Beachy, and Dr. John Crain, the president of Southeastern.[108] In those emails, Plaintiff again informs Dr. Crain and Gene Pregeant of her allegations.[109] Plaintiff states that she "was recently told that [Dr. Miller] was probably not going to be terminated," and expresses her disbelief that audio recordings of Dr. Miller asking her to smell his crotch during class and evidence of "hundreds of pages of text messages as well as emails" from Dr. Miller is not "enough for the school to take action."[110] In another email, Plaintiff also states that she wanted to finish her last year of undergraduate education at Southeastern, but that she could not "go into a building where [Dr. Miller] is teaching."[111] Plaintiff also provides evidence that Dr. Beachy forwarded that email to Gene Pregeant, in which Dr. Beachy remarks that Plaintiff's email was "sad and powerful . . . [and] demonstrates how harmful [Dr. Miller's] actions are."[112]

In addition, Plaintiff has produced sufficient evidence to create a genuine dispute of material fact regarding whether her notice was timely. Plaintiff points out that she filed a formal

---

[106] *See* Rec. Doc. 23-4 at 2. Plaintiff has also provided evidence that she met with the Dean of Students and another professor, Dr. Penny Shockett, and that she emailed the President of Southeastern. *Id.*; Rec. Doc. 35-3 at 2.

[107] *Id. See also* Rec. Doc. 23-2.

[108] Rec. Doc. 35-3.

[109] *Id.* at 2.

[110] *Id.*

[111] *Id.* at 1–2.

[112] *Id.* at 1.

complaint against Dr. Miller regarding her own allegations several months prior to her decision to transfer to a new university to avoid Dr. Miller,[113] and that "[m]uch time . . . passed before getting a call from Gene Pregeant" informing Plaintiff "of Dr. Miller's tenure and the difficulty in removing a tenured professor."[114] Plaintiff also states in her Declaration that "several more months [passed] before hearing much else," at which point "the university sent one follow-up mailing explaining Dr. Miller was still employed into the next school year, again, despite the numerous complaints."[115] Thus, the Court finds that Plaintiff has pointed to sufficient evidence to show that Defendant had an adequate opportunity to take corrective action in response to the allegations. By contrast, Defendant has pointed to no authority, nor has the Court found any, that the foregoing evidence was insufficient notice as a matter of law to support a Title IX claim.

In sum, the Court finds that Plaintiff has pointed to sufficient evidence to create a genuine issue of material fact on whether Defendant had actual notice through her own allegations and past allegations against Dr. Miller, and that Defendant had sufficient time to respond to her complaints. Accordingly, the Court finds that Plaintiff has pointed to sufficient evidence to create a genuine dispute of material fact as to whether Defendant had "actual knowledge of discrimination in the [its] programs"[116] or actual notice that "there was a substantial risk that sexual abuse would occur."[117]

---

[113] *Compare* Rec. Doc. 23 at 4 (Plaintiff stating that she reported her allegations of sexual harassment after the course ended in May of 2015) *with* Rec. Doc. 35-3 at 3 (email from Plaintiff to Gene Pregeant on July 13, 2015, asking when a decision will be made concerning Dr. Miller's employment at Southeastern and informing Pregeant that Plaintiff "will not be returning to Southeastern *if [Dr. Miller] is there*") (emphasis added).

[114] Rec. Doc. 23-4 at 2.

[115] *Id.* at 3.

[116] *Gebser*, 524 U.S. at 290.

[117] *Rosa H.*, 106 F.3d at 652–53.

### ii. Denied an Educational Opportunity and Objectively Severe and Pervasive

Second, Defendant argues that summary judgment in its favor is warranted because Plaintiff was not barred from accessing any educational opportunity or benefit by Dr. Miller's alleged conduct.[118] Defendant asserts that because Plaintiff completed her course with Dr. Miller, received a final grade, and enrolled in another university the next semester, she was never denied an educational opportunity or benefit by Defendant.[119] Defendant further contends that the alleged sexual harassment against Plaintiff was not "objectively severe and pervasive" such that it "effectively barred [Plaintiff's] access to an educational opportunity or benefit."[120]

In opposition, Plaintiff argues that she was denied multiple educational opportunities and benefits by Dr. Miller's alleged harassment.[121] Plaintiff contends that Dr. Miller's misconduct, detailed above, was so severe and pervasive that it denied Plaintiff an opportunity to learn in an environment free from harassment, and compelled Plaintiff to leave the university to finish her education out of state and seek therapy.[122] Plaintiff further argues that she was unable to attend several Ecology classes due to Dr. Miller's behavior, and eventually forced to stop going to class altogether.[123] According to Plaintiff, she was also denied a fair and unbiased grade in Dr. Miller's course.[124] Plaintiff also points out that she had expressed interest in staying at

---

[118] Rec. Doc. 22-2 at 4.

[119] *Id.*

[120] *Id.* at 5–6.

[121] Rec. Doc. 23 at 14.

[122] *Id.*

[123] *Id.*

[124] *Id.* at 15.

Southeastern for her final year to graduate, but ultimately transferred after she was told that Dr. Miller "was probably not going to be terminated."[125]

As stated *supra*, Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[126] As a preliminary matter, the Court notes that both parties appear to cite to case law discussing the standard governing a school's Title IX liability for student-on-student harassment.[127] It does not appear that the Fifth Circuit has directly addressed whether Title IX claims of teacher-on-student harassment must meet the same requirement.[128] However, several courts of appeal appear to have arrived at different conclusions as to whether the same "severe, pervasive, and objectively unreasonable" standard applies to claims for teacher-on-student harassment.[129] Moreover, in both *Davis* and *Sanches*, the Supreme Court and Fifth Circuit cases

---

[125] Rec. Doc. 35-3 at 1–2.

[126] 20 U.S.C. § 1681(a).

[127] *See* Rec. Doc. 22-2 at 3–4 (Defendant citing two student-on-student harassment cases, *Sanchez* and *Davis*, to argue that Plaintiff must establish severe, pervasive, and objectively offensive sexual harassment); Rec. Doc. 23 at 6 (Plaintiff citing the same cases); *see generally Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("A school district that receives federal funds may be liable for *student-on-student harassment* if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment." (emphasis added) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

[128] *Matthews v. Nwankwo*, 36 F. Supp. 3d 718, 723 (N.D. Miss. 2014) (noting that the "Fifth Circuit does not appear to have ruled on the applicable standard for sexual harassment claims brought under Title IX," but concluding that the severe and pervasive standard applies to teacher-on-student harassment).

[129] *Compare Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) ("The Supreme Court has applied a more rigorous standard when a Title IX plaintiff seeks damages against a school district for student-on-student harassment . . . Because this case involves teacher-on-student harassment, Appellants need not establish Blythe's misconduct was 'so severe, pervasive, and objectively offensive' that it denied Dustin equal access to educational programs or opportunities.") *with Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (applying the severe and pervasive standard for a student's claim of sexual harassment against a coach).

cited by the parties in support of applying the "severe, pervasive, and objectively unreasonable" standard here, the courts recognized that "[p]eer harassment is less likely to support liability than is teacher-student harassment."[130] Indeed, in *Sanches*, the Fifth Circuit noted that it is more "understandable" in the school context for students to engage in "insults, banter, teasing, shoving, pushing, and gender-specific conduct."[131] "Thus, to be actionable, the harassment must be more than the sort of teasing and bullying that generally takes place in schools; it must be 'severe, pervasive, and objectively unreasonable.'"[132]

Regardless, the Court need not decide this issue at this time, as Plaintiff has produced sufficient evidence to create genuine disputes of material fact on whether Dr. Miller's harassment against Plaintiff denied her an educational opportunity or benefit or was "so severe, pervasive, and objectively offensive that it effectively bar[red] [her] access to an educational opportunity or benefit."[133] As the Fifth Circuit has recognized, "[w]hether conduct rises to the level of actionable harassment depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved."[134] Here, Plaintiff has pointed to evidence that Dr. Miller's harassment began "almost immediately" at the beginning of the semester in January of 2015 and included: (1) sending Plaintiff "hundreds of pages of text messages as well as

---

[130] *Davis*, 526 U.S. at 653; *Sanches*, 647 F.3d at 165.

[131] *Sanches*, 647 F.3d at 167

[132] *Id.*

[133] *Sanches*, 647 F.3d at 165.

[134] *Id.* at 167 (quoting *Davis*, 526 U.S. at 651) (quotation marks omitted).

emails;"[135] (2) arriving unannounced at Plaintiff's work;[136] (3) asking Plaintiff to smell his crotch during class;[137] (4) standing behind Plaintiff and watching her while she mixed fertilizer on her hands and knees;[138] (5) physically touching and brushing against Plaintiff's hands, neck, backside, and breasts in an "inappropriate and unwanted" manner;[139] (6) requesting that Plaintiff "accompany him alone under the guise of education-related requests,"[140] and (7) touching the crotch of his pants "inappropriately" while alone with Plaintiff in Southeastern's greenhouse.[141] Moreover, Plaintiff has presented evidence that Dr. Miller's alleged sexual harassment caused her to skip several classes and, after the incident when Dr. Miller allegedly touched himself in front of her, stop going to class altogether.[142] Plaintiff also presents evidence that she was denied a fair and unbiased grade and was ultimately compelled to leave Southeastern when it became clear that Dr. Miller would remain employed into the fall semester.[143]

Thus, the Court finds that Plaintiff has presented sufficient evidence to show that there are genuine disputes of material fact as to whether Plaintiff was denied an educational opportunity or benefit and whether Dr. Miller's harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] [Plaintiff's] access to an educational opportunity

---

[135] Rec. Doc. 35-3 at 2; Rec. Doc. 23-4 at 1.

[136] Rec. Doc. 23-2 at 5.

[137] *Id.* at 2.

[138] *Id.* at 4.

[139] *Id.* at 9; *see also* Rec. Doc. 23-4 at 1.

[140] Rec. Doc. 23-4 at 1.

[141] Rec. Doc. 23-2 at 5–9; Rec. Doc. 23-4 at 1.

[142] Rec. Doc. 23 at 14–15.

[143] *Id.*

or benefit."[144]

### iii. *Deliberately Indifferent*

Finally, Defendant argues that summary judgment in its favor is proper because it was not deliberately indifferent to the alleged harassment of which it did not receive timely, actual notice.[145] In opposition, Plaintiff asserts that Defendant's argument fails because Defendant did have actual knowledge and notice of the allegations of sexual harassment against Dr. Miller.[146] Moreover, Plaintiff contends that Defendant does not deny that Dr. Miller was never removed by Defendant and that he was still employed at Southeastern "well into the next academic year" before he resigned.[147] Plaintiff argues that Defendant had several months after Plaintiff reported her allegations to investigate and proceed with actions against Dr. Miller, but Defendant failed to do so.[148] According to Plaintiff, she was provided little information as to whether Defendant was taking any meaningful action whatsoever, and instead was told that it would be hard to remove Dr. Miller because he was a tenured professor.[149] Furthermore, Plaintiff asserts that Defendant had actual notice of ten years of similar complaints against Dr. Miller, but that "nothing was ever done."[150]

The Fifth Circuit has determined that a school is deliberately indifferent when its

---

[144] *Sanches*, 647 F.3d at 165.

[145] Rec. Doc. 22-2 at 1–2.

[146] Rec. Doc. 23 at 15.

[147] *Id.* at 16.

[148] *Id.*

[149] *Id.*

[150] Rec. Doc. 35 at 6.

response to harassment was "clearly unreasonable in light of the known circumstances."[151] "That is a high bar, and neither negligence nor mere unreasonableness is enough."[152] "Schools are not required to remedy the harassment or accede to a parent's remedial demands," and "courts should refrain from second-guessing the disciplinary decisions made by school administrators."[153]

The Court finds that there are genuine issues of disputed fact regarding whether Defendant's response to Dr. Miller's sexual harassment amounts to deliberate indifference. Plaintiff has pointed to evidence that Defendant offered little to no response to over ten years of allegations of sexual harassment against Dr. Miller that were similar to Plaintiff's allegations. Plaintiff has also pointed to evidence that she provided actual notice to Defendant of her own allegations, and that several months passed without Defendant taking any meaningful action. Moreover, Plaintiff points to evidence that Dr. Miller remained employed at Southeastern in the fall semester of 2015, and that Plaintiff was told it would be difficult to remove Dr. Miller from his teaching position. Furthermore, Plaintiff has provided evidence of emails between her and Southeastern officials sent over several months, in which she states that she wishes to continue attending Southeastern in the fall semester but that she could not "go into a building where [Dr. Miller] is teaching" and that she would "not be returning to Southeastern if he is there."[154] By contrast, Defendant failed to attach any evidence to its motion or reply memorandum for the Court to consider what actions, if any, Defendant took in response to Plaintiff's allegations.

---

[151] *Sanches*, 647 F.3d at 167.

[152] *Id.* (citations omitted).

[153] *Id.* at 167–68 (citations omitted).

[154] *See* Rec. Doc. 35-3.

Defendant did not provide any evidence as to what investigations were launched after Plaintiff filed her complaint or what actions were taken to remedy the situation or protect Plaintiff from further harassment by Dr. Miller. Accordingly, the Court finds that there are genuine issues of disputed fact regarding whether Defendant was deliberately indifferent and therefore summary judgment is unwarranted.

In sum, the Court finds that Plaintiff has pointed to sufficient evidence to create genuine issued of disputed fact regarding whether: (1) Plaintiff provided actual notice to Defendant of the alleged harassment by Dr. Miller such that Defendant had an opportunity to take corrective action; (2) Plaintiff was barred from accessing any educational opportunity or benefit by Dr. Miller's alleged conduct or that the alleged sexual harassment was "so severe, pervasive, and objectively offensive that it effectively barred [Plaintiff's] access to an educational opportunity or benefit;" and (3) Defendant was deliberately indifferent to the alleged harassment.[155] Therefore, the Court hereby denies Defendant's motion for summary judgment as to Plaintiff's Title IX claim.

### 2. Plaintiff's Negligence Claim

With regard to Plaintiff's negligence claim under Louisiana state law, Defendant asserts that it is an arm of the state of Louisiana and is thus immune under the Eleventh Amendment to the United States Constitution from Plaintiff's state law claim.[156] Defendant contends that the Louisiana legislature has not waived Eleventh Amendment immunity for state law claims in federal court, and instead has expressly reserved its immunity.[157] In opposition, Plaintiff argues

---

[155] Rec. Doc. 22-2 at 1–2.

[156] *Id.* at 7–8.

[157] *Id.*

that Defendant expressly waived its immunity to Title IX causes of action when it accepted federal funding, and that the Court may exercise supplemental jurisdiction over Plaintiff's related negligence claim pursuant to 28 U.S.C. § 1367(a).[158] According to Plaintiff, both the Seventh Circuit and the Tenth Circuit have recognized that federal courts may hear state law claims in conjunction with a Title IX claim if they arise out of the same case or controversy.[159]

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well."[160] A state's immunity from suit under the Eleventh Amendment "is not absolute," however, and "a state may waive its immunity by voluntarily consenting to suit."[161] "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."[162] The Fifth Circuit has concluded that, pursuant to 42 U.S.C. § 2000d–7(a)(1), Louisiana waived its Eleventh Amendment immunity to claims under Title IX by accepting federal funds.[163] However, the Fifth Circuit has also recognized that Louisiana has not expressly waived its immunity under the Eleventh Amendment for all claims filed in federal court pursuant to Louisiana Revised Statute

---

[158] Rec. Doc. 23 at 16–17.

[159] *Id.* at 17–18 (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208 (10th Cir. 2014); *Doe-2 v. McLean County Unit Dist. 5 Bd., Directors*, 593 F.3d 507 (7th Cir. 2010)).

[160] *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).

[161] *Id.* (citations omitted).

[162] *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 121 (1984).

[163] *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 875 (5th Cir. 2000). *See also Thomas v. University of Houston*, 155 F. App'x 115, 117 (5th Cir. 2005) (noting that "Section 2000d–7 validly conditions acceptance of federal funds on a waiver of sovereign immunity to claims under Title IX."). 42 U.S.C. § 2000d–7(a)(1) provides that: "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX of the Education Amendments of 1972."

§ 13:5106(A),[164] which provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."[165]

Plaintiff appears to argue that, because Louisiana has waived its Eleventh Amendment immunity defense to Title IX claims, Louisiana cannot assert its Eleventh Amendment immunity to the state law negligence claim, as the Court can exercise supplemental jurisdiction over those claims.[166] Plaintiff argues that the Tenth Circuit and Seventh Circuit "have acknowledged their ability to hear State law claims specifically in conjunction to a Title IX claim if they form a part of the same case or controversy."[167] However, neither of those cases address whether the Eleventh Amendment bars exercising supplemental jurisdiction over state law claims where, as here, the state has asserted the affirmative defense of Eleventh Amendment immunity.[168]

Moreover, the Fifth Circuit rejected a similar argument in *Hernandez v. Texas Department of Human Services*.[169] There, the plaintiff brought discrimination claims against his employer, the Texas Department of Human Services, under Title VII and Texas state law.[170] The state filed a motion to dismiss the state law claims asserting the affirmative defense of Eleventh Amendment immunity, and the district court denied the motion, finding that because it had federal question jurisdiction over the plaintiff's federal claims it could exercise supplemental

---

[164] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).

[165] La. Rev. Stat. § 13:5106(A).

[166] Rec. Doc. 23 at 16–17.

[167] *Id.* at 17–18.

[168] *See Varnell*, 756 F.3d at 1208 (finding that the district court could properly decline to exercise supplemental jurisdiction after dismissing the plaintiff's federal claims); *Doe-2*, 593 F.3d at 507.

[169] *Hernandez v. Texas Dep't of Human Services*, 91 F. App'x 934, 935 (5th Cir. 2004).

[170] *Id.*

jurisdiction over the plaintiff's state law claims.[171] On appeal, the Fifth Circuit reversed the district court, finding that "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court."[172] The Fifth Circuit reasoned that "the supplemental jurisdiction statute, 28 U.S.C. § 1367, which codified pendent jurisdiction, does not abrogate Eleventh Amendment immunity."[173] Thus, the Fifth Circuit held that the district court was barred by the Eleventh Amendment from exercising jurisdiction over the plaintiff's state law claims.[174]

Plaintiff has pointed to no authority, nor has the Court found any, that demonstrates that Louisiana has waived its Eleventh Amendment immunity to state law negligence claims in federal court. Thus, based on the foregoing, the Court finds that Defendant is entitled to immunity under the Eleventh Amendment on Plaintiff's state law negligence claim.

The Court notes that the Fifth Circuit has held that dismissing a claim pursuant to an Eleventh Amendment immunity defense is a dismissal for lack of subject matter jurisdiction, and therefore must be without prejudice.[175] In *Warnock v. Pecos County, Texas*, the Fifth Circuit held that a district court erred in dismissing a claim against a state party with prejudice pursuant to the Eleventh Amendment, as "claims barred by sovereign immunity can be dismissed *only under*

---

[171] *Id.*

[172] *Id.* (citing *Pennhurst*, 465 U.S. at 120).

[173] *Id.* (citing *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).

[174] *Id.*

[175] *See Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) ("When the Eleventh Amendment applies, courts lack subject-matter jurisdiction over the claim."); *Verret v. Elliot Equip. Corp.*, 734 F.2d 235, 238 (5th Cir. 1984) (determining that "a dismissal for lack of subject matter jurisdiction in federal court is not on the merits and therefore is not with prejudice with regard thereto"); *see also Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (noting that Eleventh Amendment immunity "deprives the court of jurisdiction" and thus can only be dismissed without prejudice).

*Rule 12(b)(1) and not with prejudice.*"[176] Similarly, in *Voisin's Oyster House, Inc. v. Guidry*, the Fifth Circuit determined that a district court erred in granting a motion for summary judgment on a claim against the state of Louisiana pursuant to an Eleventh Amendment immunity defense.[177] The Fifth Circuit held that "the proper course of action for the district court would have been to treat the motion for summary judgment on the Eleventh Amendment immunity issue as a motion for dismissal for lack of subject matter jurisdiction" and dismiss the claim without prejudice.[178] Accordingly, because the Court finds that Plaintiff's state law negligence claim is barred by Defendant's Eleventh Amendment immunity defense, the Court will treat Defendant's motion as a motion to dismiss for lack of subject matter jurisdiction,[179] and hereby dismisses Plaintiff's negligence claim without prejudice.

## IV. Conclusion

Based on the foregoing, the Court finds that there are genuine issues of disputed fact precluding summary judgment here. The Court finds that Plaintiff has pointed to sufficient evidence to create a genuine issue of disputed fact regarding whether: (1) Plaintiff provided

---

[176] 88 F.3d 341, 343 (5th Cir. 1996) (emphasis added).

[177] 799 F.2d 183, 188–89 (5th Cir. 1986). *See also Hix v. U.S. Army Corps. of Engineers*, 155 F. App'x 121, 128 (5th Cir. 2005) (noting that the district court erred when it dismissed the claims against the state entity on summary judgment instead of on Rule 12(b)(1) grounds).

[178] *Id. See also Bank One Texas v. United States*, 157 F.3d 397, 403 (5th Cir. 1998) ("We construe the district court's grant of summary judgment as a dismissal for lack of subject matter jurisdiction because of the jurisdictional nature of QTA limitations.").

[179] *See generally United States v. One 1988 Dodge Pickup*, 959 F.2d 37, 39 (5th Cir. 1992) (treating a motion under Rule 55 and Rule 60 as one under Rule 59, as "it is clear that the proper characterization of the motion for these purposes is not determined by the label that the motion bears"); *Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 753, 760 (W.D. Tex. 2016) ("Although Defendants submit a Motion seeking summary judgment, the Court construes the Motion as a motion to dismiss for lack of subject-matter jurisdiction."); *Kirt v. LaFargue*, No. 13-580, 2014 WL 4369979, at *2 (W.D. La. Sept. 2, 2014) ("For the purposes of challenging the subject matter jurisdiction of this Court, the Romeros' Motion for Summary Judgment is best construed as a Motion to Dismiss under 12(b)(1) of the Federal Rules of Civil Procedure.").

actual notice to Defendant of the alleged harassment by Dr. Miller such that Defendant had an opportunity to take corrective action; (2) Plaintiff was barred from accessing any educational opportunity or benefit by Dr. Miller's alleged conduct or that the alleged sexual harassment was "so severe, pervasive, and objectively offensive that it effectively barred [Plaintiff's] access to an educational opportunity or benefit;" and (3) Defendant was deliberately indifferent to the alleged harassment.[180] Therefore, the Court denies Defendant's motion for summary judgment as to Plaintiff's Title IX claim. The Court further finds that Defendant is entitled to immunity under the Eleventh Amendment against Plaintiff's state law negligence claim. Therefore, following Fifth Circuit precedent on the issue, the Court dismisses Plaintiff's negligence claim without prejudice for lack of subject matter jurisdiction.[181] Accordingly,

---

[180] Rec. Doc. 22-2 at 1–2.

[181] *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (noting that Eleventh Amendment immunity "deprives the court of jurisdiction" and thus can only be dismissed without prejudice); *Bonin v. Gee*, No. 14-00771, 2015 WL 3682609, at *3 (M.D. La. June 12, 2015) (same); *see also Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) ("When the Eleventh Amendment applies, courts lack subject-matter jurisdiction over the claim."); *Verret v. Elliot Equip. Corp.*, 734 F.2d 235, 238 (5th Cir. 1984) (determining that "a dismissal for lack of subject matter jurisdiction in federal court is not on the merits and therefore is not with prejudice with regard thereto").

**IT IS HEREBY ORDERED** that Defendant Board of Supervisors for the University of Louisiana System's "Motion for Summary Judgment"[182] is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted in part to the extent that the Court treats it as a motion to dismiss for lack of subject matter jurisdiction and dismisses Plaintiff's state law negligence claim without prejudice pursuant to Defendant's Eleventh Amendment immunity defense. The motion is denied in part to the extent that there are disputed issues of material fact precluding summary judgment on Plaintiff's Title IX claim.

**NEW ORLEANS, LOUISIANA** this __8th__ day of August, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[182] Rec. Doc. 22.